IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **WARREN K. GLADDEN** | * | |
| Plaintiff, | * | |
| v. | * | Civil No. **PJM 10-1756** |
| **GARY LOCKE,** | * | |
| **Secretary, U.S. Dep't of Commerce** | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

Warren K. Gladden, *pro se*, has filed this suit against the United States Department of Commerce ("Commerce"), based on his ultimately unsuccessful application for employment with the National Oceanic and Atmospheric Administration ("NOAA"), a Commerce sub-organization. He alleges race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"); age discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621-34 ("ADEA"); and retaliation for engaging in protected activities, in violation of Title VII and the ADEA.

Commerce has filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. [Paper No. 16]. Because Commerce has cited evidence outside the four corners of the Complaint, the Motion will be treated as a Motion for Summary Judgment. *See* Fed. R. Civ. P. 12(d). For the following reasons, Commerce's Motion for Summary Judgment is **GRANTED**.

**I.**

From June 20 to July 31, 2007, NOAA advertised a vacancy for a Supervisory Program Manager.[1] The selectee would serve as the Deputy Director of the Office of Policy, Planning and Evaluation ("PPE") for NOAA's Office of Oceanic and Atmospheric Research ("OAR"). Major duties of the position would include, among other tasks, performing a full range of management and supervisory functions for a staff of scientific and administrative personnel, directing office administrative activities, and communicating and representing research activities in the critical mission areas of climate, weather and water, and ecosystems at an executive level for purposes of setting strategic direction and resource requirements.

NOAA advertised the vacancy through two postings on the USAJOBS[2] system: OAR-HQ-2007-0064 ("0064") and OAR-HQ-2007-0065 ("0065"). The 0064 announcement was posted under the Delegated Examining Unit ("DEU") hiring authority and was advertised for "All Qualified U.S. citizens." The 0065 announcement was posted under the Merit Assignment Plan ("MAP") and was advertised for current and former federal employees. *Both announcements sought applicants for a single position*. In other words, Commerce sought to fill only one position, but solicited applications via two separate avenues—one for all qualified citizens (0064), and the other reserved exclusively for current and former federal employees (0065).

Gladden, an African-American male born in 1954 and former government employee with a B.S. in physics and an M.S. in electrical engineering, applied for the position through both postings by the July 31 deadline. His resume included his date of birth and the year he received

---

[1] All the dates in the application process occurred in 2007, such that the year 2007 will not be repeated in the discussion.

[2] USAJOBS is a widely used application portal for employment with the federal government. *About Us*, USAJOBS, http://www.usajobs.gov/aboutus.asp (last visited June 28, 2011).

his undergraduate degree, 1979, but gave no indication of his race. On August 6, Gladden was advised that his application on USAJOBS for 0064 had been "Received," and that as to 0065 he was deemed "Ineligible—minimum requirements not met." That same day, Gladden requested an explanation from Jeanna Acklin, the NOAA hiring official, why he was considered ineligible for 0065. Acklin referred Gladden's application to a colleague, Robin Roe, who reviewed it and determined that in fact he was qualified for the MAP certificate under 0065. Accordingly, on August 8, Gladden's status with respect to USAJOBS indicated that he had been referred to the hiring official through both the 0064 and 0065 vacancy announcements.

As part of their applications pursuant to the 0064 and 0065 announcements, Gladden and the other applicants completed an "unassembled examination" portion, a series of true/false and yes/no questions asking about the applicants' occupational history. An applicant earns points on the unassembled examination by responding to these questions on the USAJOBS application. The maximum base score is 100, though applicants can receive an additional 5 to 10 points added to the maximum score for veteran's preferences. Twenty-two applicants, including Gladden, received a score of 100 on the DEU evaluation, and NOAA therefore determined to use a random number tiebreaker method to choose among them.[3] Gladden was not selected in the tiebreaker process. On August 10, NOAA issued the DEU certificate of eligible candidates, Gladden not among them.

On August 20, NOAA issued the MAP certificate of eligible candidates for the 0065 announcement. The certificate listed nine candidates, Gladden included. Thus, although Gladden's application under 0064 had been excluded through the tiebreaker process, he

---

[3] The tiebreaker method uses a random number generator to select a number from 0 to 9. The number is compared with the first of the last four digits of the applicants' Social Security numbers. The applicant whose first digit matches the random number is selected for the DEU certificate. The random number selected for the DEU certificate was 5, and the first of the last four digits of Gladden's Social Security number is 8.

nevertheless progressed to the next stage of review for the same position by qualifying for the initial evaluation under 0065.

A three-person panel, consisting of (1) Dr. Steven Fine, OAR's Director of Air Resources, (2) Craig McLean, OAR's Deputy Assistant Administrator for Program and Administration, and (3) Dr. Sandra Knight, the Director of PPE, reviewed and rescored all twelve of the DEU and MAP candidates in order to select interviewees for the Deputy Director position. Seven individuals were selected for interviews: James Burgess (white male, born in 1947); Alan Leonardi (white male, born in 1972); Elizabeth Grossman (white female, born in 1958); Daniel Mamula (white male, born in 1961); Roger Pierce (white male, born in 1960); Kevin Mooney (male, race unknown, born in 1953); and Craig Maddron (white male, born in 1963). Five individuals, including Gladden, were not selected for interviews: Warren Gladden (black male, born in 1954); Jennifer Lukens (female, race unknown, born in 1972); Aaron Watkins (male, race unknown, born in 1966); Tzu-Hsien Yen (male, race unknown, born in 1962); and Susan O'Brien (female, race unknown, born in 1973). Of the five not selected, all but one, O'Brien, had received a score of 100 or higher on the unassembled evaluation portion of the application.

Shortly thereafter Leonardi, the white male born in 1972, was selected for the position. Apart from his other qualifications—to be mentioned presently—Leonardi had filled the position as Acting Deputy Director from March to July 2007. By correspondence dated September 4, Acklin advised the other applicants that they had not been selected, and updated the status codes for each applicant on the USAJOBS system.

On September 23, Gladden noted that his status on USAJOBS for both the 0064 and 0065 announcements had changed to "Selection has been made." On October 15, he initiated EEO counseling with the NOAA Civil Rights Office. On October 19, for some reason, Gladden's

4

status on USAJOBS with respect to the 0064 announcement was changed to "App not w/i score range to be reviewed or referred. Applicant did not meet the cut-off score to be referred to the selecting official." Gladden's status for the 0065 announcement remained unchanged. In attempting to explain the status change as to the 0064 application, Acklin, the hiring official with access to the USAJOBS system, stated that she did not know "why there were conflicting notations over a period of months regarding [Gladden's] application for the DEU certificate," noting that Gladden had never been referred to the selection panel passing upon the DEU applications. Acklin attributed any change in Gladden's status under the 0064 announcement to system error.

On November 27, Gladden timely filed a formal EEOC complaint alleging race and age discrimination and retaliation. Of the three panel members who reviewed all of the candidates on the DEU and MAP certificates, Knight stated that she only became aware of Gladden's EEO complaint, as well as his race and age, in November when she was contacted by an EEO counselor. The other two panel members, McLean and Fine, also stated that they did not know about Gladden's EEO complaint or his race nor were they specifically aware of his age, until they were contacted by an EEO investigator. None of the panel members had ever met Gladden.

The record further establishes the following:

In conjunction with USAJOBS, the Department of Commerce hiring system uses a computer application known as Monster Hiring Management ("MHM"), an entry portal for job applications. Applicants submit information through USAJOBS, which is then transferred to the applicable agency's MHM system. Information is transferred to MHM from USAJOBS only if the MHM system requests the data. In Gladden's case, although USAJOBS collects race and age

information from applicants, no race information was transferred to the Commerce MHM system because the system did not import that information.[4]

The EEOC issued its final decision on Gladden's complaint on August 3, 2009, finding no discrimination or retaliation. Gladden's appeal of the decision was pending for 180 days before he filed the present suit.

## II.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent

---

[4] Prior to 2009, the Department of Commerce, including NOAA, did not collect race information on MHM. Gladden submitted his application in 2007.

6

factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### III.

Gladden alleges race and age discrimination and retaliation in violation of the 1964 Civil Rights Act and the ADEA, respectively. As plaintiff, he has the burden of establishing discriminatory intent for all of the claims. This burden can be met either by presenting direct evidence of discriminatory animus, *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988), and/or retaliation, *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004), or through the indirect burden-shifting proof scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See also Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir. 2004) (applying *McDonnell Douglas* framework to ADEA claims); *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (applying *McDonnell Douglas* framework to retaliation claims). Because Gladden has offered no direct evidence of discriminatory animus, his claims are properly analyzed under the three-part *McDonnell Douglas* framework.[5] *See Mereish*, 359 F.3d at 334.

Under *McDonnell Douglas,* to justify an inference of discrimination, the plaintiff must first establish a *prima facie* case of discrimination. *Id.* The central focus of the inquiry is whether the employer has treated some people less favorably than others because of a protected status, such as age or race. *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577 (1978) (quoting *Teamsters v. United States,* 431 U.S. 324, 335 n.15 (1977)).

If the plaintiff establishes a *prima facie* case, a presumption of discrimination arises, which the employer may rebut by articulating a legitimate, non-discriminatory reason for its

---

[5] Gladden relies entirely on the *McDonnell Douglas* framework and provides no evidence tending to show discrimination on the part of a specific individual within NOAA.

7

employment decision.  *See Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981).  The employer's burden is merely one of production, not persuasion.  *Id.* at 255-56.  If the employer meets this burden, the presumption raised by the plaintiff's *prima facie* case is rebutted and the factual inquiry proceeds to a "new level of specificity."  *Id.* at 255.

At that juncture, the plaintiff must prove that "the legitimate reasons offered by the agency were not its true reasons, but were a pretext for discrimination."  *Id.* at 253; *see also Williams v. Cerberonics, Inc.,* 871 F.2d 452, 456 (4th Cir.1989).  To support a finding of pretext, a plaintiff must demonstrate that the hirer's articulated reasons have no basis in fact or that its reasons were not the "real" reason for the adverse employment action.  *See Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 931 (7th Cir. 1996).  "The plaintiff must establish that he was the better qualified candidate for the position sought" to meet his burden of proving that the company's explanation is pretextual and that he was the victim of intentional discrimination.  *Evans v. Techs. App. & Serv. Co.,* 80 F.3d 954, 960 (4th Cir. 1996).

The ultimate burden of showing that the employer intentionally discriminated against him remains at all times with the plaintiff.  *Burdine,* 450 U.S. at 253.  Even if the plaintiff demonstrates a *prima facie* case and sufficient pretext, however, the defendant will still be entitled to judgment as a matter of law if "no rational factfinder could conclude that the action was discriminatory."  *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000); *see also Gillins v. Berkeley Elec. Coop., Inc.,* 148 F.3d 413, 416-17 (4th Cir. 1998) (explaining that the plaintiff must develop some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action).

**IV.**

Gladden claims he was not hired for the Deputy Director position because of discrimination based on his race and/or age and/or in retaliation for engaging in protected activities. The Court finds, as a matter of law, that he has not shown this.

**A.**

To prove a claim of failure to hire due to race and age discrimination under the *McDonnell Douglas* framework, Gladden must show that (1) he is a member of a protected group; (2) there was an open position for which he applied or sought to apply; (3) he was qualified for the position; and (4) he was rejected under circumstances giving rise to an inference of unlawful discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *Burdine,* 450 U.S. at 253. The Court finds that Gladden satisfies the first two factors and will assume, *arguendo*, that he satisfies the third.[6] The core issue is whether the fourth prong has been met, i.e., whether Gladden was rejected under circumstances giving rise to an inference of unlawful discrimination.

The applicant ultimately selected, Leonardi, is a white male who was 35 years of age at the time of the employment decision. Thus, the selectee was outside of Gladden's protected racial class and protected age class.

**B.**

With respect to the race discrimination claim, under *McDonnell Douglas* the selection of Leonardi would seemingly fulfill the fourth element for a *prima facie* showing of employment discrimination. *See Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994) (holding that selection of an applicant outside the plaintiff's racial class satisfies the fourth prong of the *prima facie* case). However, applying this rule to the present circumstances is problematic, since there is no

---

[6] In a case such as this, where the ultimate issue is whether someone else was better qualified than the plaintiff, the third factor to some extent merges into the fourth.

indication that the selecting officials in this case were in any way aware of Gladden's race at the time of the employment decision. It has been stated many times over that the *McDonnell Douglas* framework should not be applied in a "rigid, mechanized, or ritualistic" manner. *Brinkley v. Harbour Rec. Club*, 180 F.3d 598, 611 (4th Cir. 1999). The test is, instead, a means to "fine-tune the presentation of proof and . . . sharpen the focus on the ultimate question— whether the plaintiff successfully demonstrated that the defendant *intentionally* discriminated against her." *Id.* (emphasis added). Quite clearly, then, as a matter of logic, if the selecting officials were unaware of Gladden's race at the time of the employment decision, to apply *McDonnell Douglas* here would be to engage in a formalistic ritual, instead of the practical, flexible approach the Fourth Circuit mandates.

For this reason, the Fourth Circuit has held that the protected status must have *actually* played a role in the employer's decision-making process. *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 286 (4th Cir. 2004). For this to be so, there obviously must be some indication that the deciding officials were aware of the applicant's status as a protected individual. *See, e.g.*, *Moore v. Reese*, 817 F. Supp. 1290, 1298 (D. Md. 1993) ("It is impossible for an employer, who does not know the race of an employee, to discriminate against that employee."); *Pollard v. Quest Diagnostics*, 610 F. Supp. 2d 1, 21 (D.D.C. 2009) (holding that it is "axiomatic that a defendant cannot be found to have discriminated against a plaintiff on the basis of race where the defendant had no knowledge of the plaintiff's race"). Without at least some plausible evidence indicating that at least one of the NOAA officials was aware of Gladden's race, his *prima facie* case of race discrimination falters.

Gladden's argument that Commerce is *required* to know the race of every applicant, pursuant to the Uniform Guidelines for Employee Selection Procedures ("UGESP"), misses the

point.⁷ Whether or not Commerce, in general, is required to maintain such data, there is no indication here that the selecting officials themselves had access to such data. While Gladden asserts that he provided race information while completing the USAJOBs application, he implicitly accepts that Commerce's MHM hiring system includes no dedicated field for the transfer of racial information. Indeed, Commerce's showing that its MHM hiring system contained no race-related information indicates rather forcefully that the selecting officials would have no reason to know Gladden's race at the time their decisions were made. Furthermore, none of the exhibits presented by both parties make any mention of Gladden's race.

Gladden's case authorities do not alter the inescapable reality that a hirer cannot discriminate based on an unknown quality. In *E.E.O.C. v. Sears Roebuck*, 243 F.3d 846 (4th Cir. 2001), an employee of Sears applied for and was denied another position within Sears. *Id.* at 851. In that case, unlike the present one, it could easily be inferred that the plaintiff's employer was aware of his race. In *Garrison v. Cambro, Inc.*, 428 F.3d 933 (10th Cir. 2005), which involved an employee applying for a promotion within the same company, *id.* at 936, an inference that the hirer knew of the applicant's protected status was as obvious as it was in *Sears Roebuck*. Similarly, *Sarmiento v. Montclair State University*, 513 F. Supp. 2d 72 (D.N.J. 2007), also involved a current employee applying for a promotion. Finally, in *Brown v. Marriott International*, No. AW-07-1585, 2008 U.S. Dist. LEXIS 121179, at *2 (D. Md. Oct. 31, 2008), the applicant specifically informed the hirer prior to rejection that he was a "minority business owner."

---

⁷ Gladden delves into the UGESP, which mandate that public hirers maintain information on the protected statuses of all applicants so as to monitor for any disparate impact. 29 C.F.R. § 1607.4. The alleged failure to do so may, in some instances, result in a rebuttable presumption of discriminatory intent in a disparate impact employment discrimination claim. *Id.* In this instance, however, Gladden is not making a disparate impact claim; he has asserted specific discriminatory treatment on the part of the selecting officials involved in the hiring at issue.

In none of these cases did the court hold that a *prima facie* showing of discrimination may be established where the plaintiff provides no evidence tending to prove knowledge of the applicant's protected class. Indeed, in *Sears Roebuck* the court stressed that the crux of a failure to hire claim is evidence that the applicant was rejected "under circumstances which give rise to an inference of unlawful discrimination." *Sears Roebuck*, 243 F.3d at 851 (citing *Burdine*, 450 U.S. at 253).

The Court finds that Gladden has failed to satisfy the *prima facie* case of race discrimination.

## C.

*McDonnell Douglas* is also applicable to ADEA claims. *Mereish*, 359 F.3d at 334. To get beyond summary judgment, Gladden must establish a *prima facie* case of age discrimination, which the defendant can rebut by showing legitimate, non-discriminatory reasons for hiring Leonardi over Gladden. *See McDonnell Douglas*, 411 U.S. at 802. The burden would then shift back to Gladden to demonstrate that the proffered reasons were in fact a pretext for discrimination. *See id.* The Court concludes that Gladden has satisfied the four prongs necessary to show a *prima facie* case of age discrimination under the ADEA. That said, however, his ADEA claim fails because Commerce has articulated legitimate, non-discriminatory reasons for hiring Leonardi over him, and Gladden has shown no pretext for its decision.

Gladden's age, in contrast with his race, is clearly ascertainable from the application materials provided to Commerce, since his resume indicates his date of birth and the date of his graduation from the University of Maryland (1979). Gladden also supplied a copy of an SF-50 form with his application, verifying his past federal employment, and the form lists his year of

birth. Further, Acklin, the NOAA hiring official who first reviewed Gladden's application, concedes that she knew Gladden's age because his date of birth was on his resume.

While the age gap that constitutes replacement by a "substantially younger" person is not precisely defined, gaps ranging from eight years and up have qualified. *See, e.g.*, *Hogg v. Fraser Shipyards, Inc.*, 407 F. Supp. 2d 1027, 1035 (W.D. Wisc. 2006) (holding that eight year gap was sufficient to constitute "substantially younger" replacement); *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 328 (D. Md. 2003) (a replacement eleven years younger is substantially younger). The Court thus finds that choosing to hire Leonardi, born in 1972, over Gladden, born in 1954, suffices to meet the "substantially younger" prong of the ADEA *prima facie* case.

It is also apparent that Gladden falls within the ADEA protected class, that he applied for an open position for which he was qualified,[8] and that he was rejected in favor of a "substantially younger" applicant. This satisfies the *McDonnell Douglas prima facie* case of discrimination. *See Laber*, 438 F.3d at 430 (*prima facie* case is met by selection of a "substantially younger" applicant, whether within or without the protected class); *Dugan v. Albemarle County Sch. Bd.*, 293 F.3d 716, 721 (4th Cir. 2002) (*prima facie* case satisfied by selection of a substantially younger applicant); *Inman v. Klockner Pentaplast of America, Inc.*, 347 F. App'x 955, 959 (4th Cir. 2009) (same). The burden accordingly shifts to Commerce to provide legitimate, non-discriminatory reasons for choosing to hire Leonardi over Gladden.

**D.**

Because Commerce's explanation of its legitimate, non-discriminatory reasons applies to the claim of race discrimination as well as the claim of age discrimination, the Court considers the explanation in both contexts.

---

[8] Commerce, by advancing Gladden beyond the initial stage of review, implicitly admitted that Gladden met the minimum qualifications for the position.

If Commerce provides legitimate, non-discriminatory reasons for hiring Leonardi over Gladden—e.g., advances reasons showing that Leonardi was more qualified than Gladden—it would remain for Gladden to prove that "the legitimate reasons offered by the agency were not its true reasons, but were a pretext for discrimination." *Cerberonics, Inc.*, 871 F.2d at 456. To do so, Gladden would have to establish that he was in fact the better qualified candidate for the position. *See Evans,* 80 F.3d at 960.

It is well settled that an employer "has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Burdine*, 450 U.S. at 259. "Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." *Evans*, 80 F.3d at 960. A candidate may not "simply compare herself to other employees on the basis of a *single evaluative factor artificially severed* from the employer's focus on multiple factors in combination." *Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006) (emphasis added).

Here, the record unequivocally shows that selecting officials performed a thorough and complete review of all qualified applicants. After Acklin initially disqualified Gladden from the MAP certificate (0065) and Gladden requested a review of his application, Roe promptly reconsidered the decision and just as promptly determined that Gladden in fact met the baseline level of experience necessary for further consideration. At that point, Gladden progressed to the same stage of review and received the same consideration as all other eligible candidates when the three-person panel reviewed his application.

Leonard, the applicant ultimately selected, has an undergraduate degree in atmospheric science and a doctorate in physical oceanography (Gladden does not have a doctoral degree). Further, as indicated previously, at the time he applied for the position, he was working at NOAA as a contract scientist, a meteorologist, and indeed as Acting Deputy Director of the

14

Office of Policy, Planning, and Evaluation. This background matched well with the stated requirements of the job, which included "the ability to communicate and represent relevant research activities in the critical mission areas of climate, weather and water, and ecosystems at an executive level for purposes of setting strategic direction and resource requirements." Leonardi literally demonstrated on-the-job ability. The members of the selection panel acknowledged Leonardi's exceptional experience and skills. Knight said she selected him "based on recommendations from the other panel members, his educational background, and because he had experience in the office . . . and outside of the workplace that made him the strongest candidate for the job." McLean described Leonardi as "remarkably well versed and prepared in the subject matter areas" with "unique and advanced qualifications in the multiple academic disciplines involved in this position." Although McLean did not specifically recall Gladden's application, he noted that there was a clear difference between the candidates who were selected for interviews and those who were not, and that the candidates in the latter category had "significantly less[] . . . experience and demonstrated ability."

Although, as his brief suggests, Gladden may prefer that Commerce focus exclusively on the results of the unassembled examination,[9] the hiring officials at Commerce were free to use whatever non-discriminatory criteria they please. *See Burdine*, 450 U.S. at 259. Their reliance on the intangibles reflected in Leonardi's resume and recommendations constituted legally permissible reasons to hire Leonardi over Gladden, in fact over all the other applicants.

Gladden's narrow focus on his exam results ignores the limited role the rating system plays in the hiring process. For example, the unassembled examination does not include an

---

[9] The Court notes yet again that Gladden was not the only applicant who received a score of 100 but did not get an interview. Three other applicants—Lukens, Watkins, and Yen—also received a score of 100 but did not advance to the interview stage.

evaluation of answers to essay questions, an applicant's resume, an applicant's references, or numerous other elements of employment applications that cannot be quantified by true/false or yes/no answers. The position Commerce sought to fill was broad and far reaching, and the skills needed to perform it were similarly extensive. As stated in *Burdine*, it is not up to an applicant to select the criteria on which his application is to be judged. 450 U.S. at 259. Hirers enjoy flexibility and discretion to evaluate applications, and courts reviewing their decisions may not artificially limit them to those factors advanced by the plaintiff. The selection panel was not confined to the unassembled examination results achieved by the applicants. The Court finds that Commerce has advanced legitimate, non-discriminatory reasons for hiring Leonardi. And with that, the burden once again shifts back to Gladden to show that Commerce's reasons were pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804.

Gladden has advanced no evidence showing pretext. As established earlier, since there is no indication that the selecting officials were even aware of Gladden's race at the time of the decision, there could be no pretext as to race.

As for age discrimination, of the twelve applicants originally advanced, eleven were in Gladden's protected age class. Six of the seven interviewees were in the same protected class. That so many applicants within Gladden's protected age class advanced to the interview stage undermines any argument that the reasons advanced for his rejection were a pretext for age discrimination. *See, e.g.*, *Richter v. Hook-SupeRx, Inc.*, 142 F.3d 1024, 1032 (7th Cir. 1998) (holding that retaining employees comparable in age to the plaintiff weakened an inference of discrimination in employment termination case).

Given Leonardi's stronger credentials, as well as the absence of circumstantial factors indicating that age played any role in Commerce's hiring decision, the Court finds no basis from which a trier of fact could fairly infer that the reasons advanced by Commerce for not hiring

Gladden were pretextual. From all that appears in the record, Gladden received a fair, objective evaluation of his application.

E.

The *McDonnell Douglas* framework also applies to retaliation claims. *Price*, 380 F.3d at 212. A plaintiff establishes a *prima facie* showing of retaliation by demonstrating that (1) he engaged in protected activity, (2) adverse employment action was taken against him, and (3) a causal relationship existed between the protected activity and the adverse action. *Id.* The Court holds that Gladden has not made out a *prima facie* case for retaliation. While he engaged in a protected activity, he has not demonstrated that he suffered a materially adverse employment action nor has he shown that anything that happened to him was causally related to his protected activity.

A materially adverse employment action is one that would dissuade a reasonable employee "from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation omitted). Although in the retaliation context adverse actions are not limited to actions "that affect the terms and conditions of employment," the actions must exceed "petty slights [and] minor annoyances." *Id.* at 64, 68; s*ee also Isaac v. City of New York*, 701 F. Supp. 477, 492 (S.D.N.Y. 2010) (employer's failure to update employee's telephone number in department directory did not constitute an adverse employment action in a retaliation claim).

Gladden's proffered adverse employment action, the change of his status in connection with the 0064 posting, does not rise above the category of "petty slights and mere annoyances." He contacted the NOAA Civil Rights Office on October 15, and filed a formal EEO complaint with that office four days later. The very same day, for some reason, his status on USAJOBS for the 0064 announcement under the DEU hiring authority changed from "Selection has been

17

made" (meaning that the position had already been filled) to "App not w/i score range to be reviewed or referred. Applicant did not meet the cut-off score to be referred to the selecting official." This change in status, which was admittedly erroneous, is the basis for Gladden's retaliation claim. He maintains that the change from an essentially neutral indicator (i.e., that someone else had been selected) to a more negative indicator (i.e., that he did not meet the minimum cut-off score) was an adverse employment action, and that the action was taken in retaliation for his EEO activity.

But the change, for whatever reason it was posted, was not made until two months after the selection of Leonardi (and non-selection of Gladden) occurred. Hence, it could not have affected the hiring decision. In any case, it appears that Gladden's 0064 application was never forwarded to the selection panel because the 0064 decision was based on the tiebreaker method. Finally, of course, Gladden eventually passed on to the selection panel under 0065, notwithstanding his non-selection under 0064. The change in status therefore does not amount to an adverse employment action because it did not otherwise affect Gladden's employment status with Commerce under the 0064 announcement and is no more than a minor annoyance. *See Burlington Northern & Santa Fe Ry. Co.*, 548 U.S. at 64.

In any event, Gladden has failed to demonstrate that there was a causal relationship between his EEO activity and the status change. He relies on *Thurston v. Am. Press, LLC*, 497 F. Supp. 2d 778, 783 (W.D. Va. 2006), for the proposition that an employer's knowledge of protected activity, coupled with an adverse action taken at the first opportunity thereafter, satisfies the casual connection of the *prima facie* case. But in *Thurston*, there was evidence that hiring officials knew of an applicant's EEOC activity against the defendant from 2001 and discussed it with him at an interview for a position in 2005. *Id.* at 782. When the applicant was not selected for the position, he filed another EEOC complaint, claiming that the defendant

18

retaliated against him for his 2001 complaint by not hiring him. *Id.* at 780. The court found that the plaintiff satisfied the *prima facie* case, but stressed that "temporal sequence should not be confused with logical consequence." *Id.* at 784.

Unlike the plaintiff in *Thurston*, who was not selected for a position almost immediately after discussing his EEOC history during an interview, Gladden initiated his EEO complaint over one month *after* his non-selection for the Deputy Director position. Although he argues that the change in his USAJOBS status was the first available action that NOAA officials could take to retaliate against him, there is no evidence that the hiring officials actually took that action or that the status change was made in response to his EEO activity. Acklin attributed the change in status to system error. Moreover, the members of the selection panel did not become aware of Gladden's EEO activity until November, some three months after they selected Leonardi and one month after the status change on USAJOBS. They could not, therefore, have based their non-selection of Gladden on his status change.

The Court concludes that Gladden has not satisfied the elements of the *prima facie* case for retaliation.

**V.**

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment [Paper No. 16] as to all Counts. Final Judgment will be entered in favor of Defendants and the case will be **CLOSED**.

A separate Order will **ISSUE**.

_____/s/_____
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**June 30, 2011**